UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| OPTIGEN, LLC, | Civil Action No. 5:09-CV-6 (GTS/ATB) |
| Plaintiff, | (LEAD CASE) |
| v. | |
| INTERNATIONAL GENETICS, INC, et al., | |
| Defendants. | |

---

| | |
|---|---|
| OPTIGEN, LLC, | Civil Action No. 5:09-CV-457 (GTS/ATB) |
| Plaintiff, | (MEMBER CASE) |
| v. | |
| TEXAS A&M UNIVERSITY SYSTEM, et al., | |
| Defendants. | |

---

JODYANN GALVIN, ESQ., for Plaintiff
CHARLES E. PEELER, ESQ., for Defendants International Genetics, Inc.; Genetic Fulfillment USA, LLC; Pinpoint DNA Technologies, Inc.; and Richard Dobbins

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Presently before this court is plaintiff's amended cross-motion (Dkt. No. 130), pursuant to FED. R. CIV. P. 56(f), to deny or continue the motion of Defendant International Genetics, Inc. ("InGen") for summary judgment (Dkt. No. 116) until the

plaintiff can conduct further discovery.[1]  For the reasons stated below, this court grants the cross-motion, in that it orders a continuance with respect to InGen's summary judgment motion until July 2, 2010 so that plaintiff can conduct further relevant discovery, and gives plaintiff leave to file a supplemental response in opposition to InGen's motion by August 2, 2010.

## I.      Relevant Facts and Procedural History

Plaintiff OptiGen, LLC ("Optigen") is a company based in Ithaca, New York in the business of providing DNA-based diagnostic services to test for inherited diseases in dogs.  OptiGen is the exclusive licensee of several U.S. patents relating to genetic tests for inherited canine diseases, and has filed two actions, now consolidated (09-CV-6 Dkt. No. 38), alleging, *inter alia*, infringement of those patents.  (Complaint, 09-CV-06, Dkt. No. 1 ("06 Compl."); Complaint, 09-CV-457, Dkt. No. 1 ("457 Compl.")).

Defendant PinPoint DNA Technologies, Inc. ("PinPoint"), was founded in 2006 by Defendant Richard Dobbins ("Dobbins") and is based in Georgia.  (06 Compl. ¶¶ 5, 12).  PinPoint offered a service called "Pawsitive I.D." for the DNA testing in dogs and cats.  (*Id.* ¶ 13).  In January 2008, OptiGen notified PinPoint and Dobbins that

---

[1] By text order dated April 1, 2010, United States District Judge Glenn T. Suddaby referred this cross-motion for discovery to me for decision, and directed that InGen's summary judgment motion would be held in abeyance pending my ruling.  Because this court is not denying InGen's summary judgment motion under Rule 56(f), but is only continuing the motion until plaintiff can complete discovery and file a further response to the motion, this is a non-dispositive matter properly referred to me for a direct decision.  *See, e.g., Crane v. Poetic Products Limited*, 549 F. Supp. 2d 566, 568 (S.D.N.Y. 2008).

their activity in selling, offering to sell, making, and using one particular genetic test by means of the Pawsitive I.D. testing kit constituted infringement of two of OptiGen's patents. (*Id.* ¶ 14). By April 15, 2008, PinPoint no longer actively promoted that genetic test on its website. (*Id*. ¶ 15).

In approximately July 2008, Dobbins set up InGen under the law of The Bahamas to perform genetic testing for pets in that country. InGen purchased assets from PinPoint, including the Pawsitive I.D. product and trademark, database, and website domain names. (06 Compl. ¶ 16). InGen now offers the Pawsitive I.D. and other genetic testing service for purchase through its Bahamian website, including to customers in the United States. (*Id*. ¶ 23).

On February 12, 2010, plaintiff requested a conference with this court to resolve certain discovery disputes with InGen and related defendants. (09-CV-06 Dkt. No. 112). The court scheduled a conference for March 23rd. In the interim, InGen filed a motion for summary judgment, seeking dismissal of all the claims against it in both actions. (09-CV-06 Dkt. No. 116). During the discovery conference, this court addressed various discovery issues, taking into account the pendency of the InGen summary judgment motion, which, even if granted, would not affect numerous causes of actions against PinPoint, Dobbins, and other defendants in both cases. On March 24, 2010, this court entered an order resolving the discovery issues and, with the consent of the parties involved, extending the deadline for the completion of ongoing

discovery until July 2, 2010.  (Dkt. No. 121).[2]  On March 29, 2010, plaintiff filed its opposition to InGen's summary judgment motion and the cross motion under Rule 56(f), which it amended the following day.  (09-CV-06 Dkt. Nos. 124-130).  On April 5th, InGen filed a response to plaintiff's cross motion.  (Dkt. No. 137).[3]

InGen's summary judgment motion relies heavily on a recent *en banc* decision of the Federal Circuit which held that the infringement provisions of Section 271(f) of the Patent Act do not apply to a "method" patent.  *Cardiac Pacemakers, Inc. v. St. Jude's Medical, Inc.*, 576 F.3d 1348, 1365-66 (Fed. Cir. 2009), *cert. denied*, _ U.S. _, 130 S. Ct. 1088 (2010) (interpreting 35 U.S.C. § 271(f)).  The patents in dispute in the cases before this court are "method" or "process" patents, in that they protect, not a product or device, but a series of steps of a method or process.  (InGen's Memo. of Law, Dkt. No. 116-1, at 3-4).[4]  Section 271(f) expands the reach of the Patent Act to impose infringement liability on one who "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention

---

[2] The order directed defendants to respond to particular discovery requests between March 31 and April 15, 2010, but authorized additional discovery beyond those dates.  OptiGen's discovery requests were limited by this court, to some extent, pending resolution of the summary judgment motion by Judge Suddaby.  On April 8, 2010 (after it filed its cross-motion), OptiGen filed objections to the limitations placed on their discovery in this court's order, which "appeal" is now pending before Judge Suddaby.  (Dkt. No. 138).

[3] Plaintiff's cross-motion was made returnable on May 13, 2010, but because InGen's responsive papers have already been filed, this court will proceed to address the cross-motion.

[4] The page numbers of memoranda of law or other pleadings cited herein are the internal page numbers of those documents, not the numbers assigned by the CM-ECF system.  Counsel for OptiGen has acknowledged that the patents in question are "method" patents.  (Transcript of Discovery Conference, Dkt. No. 123, at 8).

. . . in such manner as to actively induce combination of such components outside of the United States in a manner that would infringe the patents if such combination occurred within the United States." 35 U.S.C. § 271(f).

InGen construes the *Cardiac Pacemaker* case as holding that, to infringe a U.S. method patent, all of the steps of the method must be performed within the United States. It argues that, because InGen does not conduct any genetic testing in the United States, it cannot infringe the OptiGen patents, even assuming that InGen performs the patented method in the Bahamas (which InGen concedes, only for the purposes of its motion). (InGen's Memo. of Law at 2 n.1, 4-5). InGen further argues that, if it cannot infringe OptiGen's patents from the Bahamas, it also cannot be liable on OptiGen's claims based on the Lanham Act or its common law claim for misappropriation of intellectual property. (*Id.* at 6-8).

In opposing InGen's summary judgement motion, OptiGen argues:

> Contrary to InGen's assertions, [the *Cardiac Pacemakers*] case is not dispositive of OptiGen's patent claims. First, the Federal Circuit's decision in *Cardiac Pacemakers* is limited in scope, as it addresses infringement under only one section of the Patent Act–Section 217(f). *Cardiac Pacemakers* does not address, among other things, whether an accused infringer who, like InGen, sells or offers to sell within the United States the performance of every step of a patented method infringes under 35 U.S.C. § 271(a). Second, *Cardiac Pacemakers* impacts OptiGen's Section 271(f) claims only to the extent that InGen is performing the patented method in the Bahamas. OptiGen has reason to believe that InGen conducted, and continues to conduct, testing in the United States and it is entitled to full discovery into that subject before this motion is ruled upon.

5

(OptiGen Memo. in Opposition to InGen's Motion for Summary Judgment, Dkt. No. 124-1, at 6). OptiGen further argues that its various other claims against InGen–for inducing infringement by others, violations of the Lanham Act, and unfair competition–would survive even if its patent infringement claims did not. (*Id.* at 14-19).

In its reply in support of its summary judgment motion, InGen responds to OptiGen's argument that it's infringement action is based, in part, on InGen's sale or offer of sale of a patented method within the United States. Critically, for the purposes of this court's decision on OptiGen's Rule 56(f) cross-motion, InGen relies heavily on factual statements about the manner in which it sells its genetic testing services from the Bahamas in an attempt to establish that it does not sell or offer to sell the patented method in the U.S. (Reply in Support of InGen's Summary Judgment Motion, Dkt. No. 137, at 2).[5] Further, InGen distinguishes cases cited by OptiGen with respect to the sale/offer of sale theory of infringement, in part, by arguing that InGen's sales methods differ factually from those of the parties in other cases who were found to be making infringing offers and sales in the U.S. (*Id.* at 3-6).[6] In

---

[5] For example, InGen argues that it solicits customers, takes orders, accepts payments, and provides testing results through a website which runs from a server in the Bahamas. (*Id.*) OptiGen counters with a Declaration of its President documenting that she accessed the InGen website from the United States, ordered a genetic test, and received a confirming e-mail in the United States. (Pearce-Kelling Declaration, Dkt. No. 126).

[6] For example, OptiGen relied on *CLS Bank International v. Alice Corporation*, 667 F. Supp. 2d 29, 36 (D.D.C. 2009) (holding that "one who 'sells' or 'offers to sell' each and every step

opposing OptiGen's cross-motion under Rule 56(f), InGen states: "The only question before this Court [in connection with the summary judgment motion] is where InGen performs its genetic testing. On that topic, there is no dispute that InGen conducts its testing in the Bahamas." (*Id.* at 8).

## II.   Discussion

### A.   Rule 56(f)–Applicable Law

Rule 56(f) of the Federal Rules of Civil Procedure, as interpreted by the courts, provides "that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir.2001) (citations omitted). "[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Trammell v. Keane*, 338 F.3d 155, 161 n. 2 (2d Cir.2003) (citation omitted). As the Second

---

of a patented method infringes the patent," even if those steps are performed outside of the United States). In attempting to distinguish *CLS Bank International*, InGen argued: "In reaching its conclusions, the Court noted that CLS is organized under U.S. laws (*Id.* at 32), has a network of third-party service provider resellers located within the United States (*Id.*), and engages in contracts with its resellers in the U.S. pursuant to U.S. laws (*Id.*). Here, as set forth above and in the Declaration of Richard Dobbins [Doc. 116-2] and the April 5, 2010 Declaration of Richard Dobbins, InGen is a Bahamian corporation located in the Bahamas and any sales and/or offers to sell genetic testing in the present matter occur outside the United States, as do all transactions between InGen and its customers and all genetic testing." (Reply in Support of InGen's Summary Judgment Motion at 5).

Circuit has stated:

> Under Rule 56(f), summary judgment may be inappropriate where the party opposing it shows . . . that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (internal quotations and citations omitted). If a court determines that the party opposing a summary judgment motion "cannot present facts essential to justify its opposition," it may deny the motion, order a continuance to enable necessary discovery to be undertaken, or issue any other just order. FED. R. CIV. P. 56(f).[7]

For the party opposing summary judgment to be entitled to a delay to conduct more discovery under Rule 56(f), "a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244-245 (2d Cir.2004) (citations omitted). "Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered"– that is, a mere fishing expedition. *Nat'l Union Fire Ins. Co. of*

---

[7] Rule 56 was amended in 2007, but the Advisory Committee Notes indicates the changes were intended to be stylistic only.

*Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir.2001) (internal quotations and citation omitted).

### B. Application

OptiGen has filed an attorney's affidavit and other documents that meet the requirements of Rule 56(f). (Galvin Declaration, Dkt. No. 125, ¶¶ 7-16; OptiGen Response to InGen Statement of Material Facts, Dkt. No. 127). OptiGen seeks additional discovery to determine the extent to which InGen or its predecessor conducted the patented genetic testing methods in the United States. (Galvin Decl. ¶ 14). OptiGen sets forth a good faith basis for believing that it can, through further discovery, develop further information to rebut the crucial factual predicate of InGen's summary judgment motion–that it performed the genetic testing exclusively in the Bahamas. (*Id.* ¶ 15).[8]  OptiGen describes the discovery disputes with InGen that prevented it from obtaining the necessary information sooner, and how it intends to proceed with discovery, in light of this court's recent ruling to seek that information. (*Id.* ¶¶ 8-12).[9]

---

[8] For example, OptiGen references an affidavit of an investigator who located an apparent place of business of InGen in Marietta, Georgia. (*Id.*).

[9] This court notes that the limitations placed on OptiGen's discovery requests in the order of March 24, 2010 (Dkt. No. 121) should not impede OptiGen's efforts to gather the information it needs to oppose InGen's summary judgment motion. Pending resolution of the summary judgment motion, this court limited OptiGen's request for InGen training manuals and protocols for genetic testing that might infringe OptiGen's patents "to the extent that the requested documents must relate to the described training or genetic testing conducted, in whole or in part, in the United States at any point in time starting in 2006." (*Id.*) The order further provides: "To the extent training manuals, written protocols, materials, or information responsive to Request

For the purpose of resolving OptiGen's cross-motion under Rule 56(f), this court does not need to decide the merits of the difficult issues of patent law that the parties present in their memoranda of law. It is clear that InGen's summary judgment motion is predicated, in substantial part, on certain factual claims that it performs its genetic testing and sales activities exclusively in the Bahamas. OptiGen requests an opportunity to complete discovery so it can contest the factual statements on which InGen's summary judgment motion is based, before that motion is resolved. OptiGen has presented sufficient evidence to establish that it is not pursuing an unwarranted or futile "fishing expedition" by seeking further discovery with respect to whether, and to what extent, InGen performs testing or sales activities in the United States. Accordingly this court rules that OptiGen should be entitled to complete discovery

---

Nos. 1 or 2 are now used exclusively by Defendant International Genetics, Inc. for training or genetic testing in the Bahamas, they shall nonetheless be subject to production if they were substantially derived from, or are substantially similar to, the documents previously used for such training or genetic testing in the United States." (*Id.*) OptiGen objects to these limitations, arguing that it will need to establish that InGen is performing steps of patented processes in the Bahamas to prove that the sale or offer to sell these processes in the United States is a direct infringement under Section 271(a) of the Patent Act. (OptiGen Memo. of Law in Support of Objections to the March 24, 2010 Discovery Order, Dkt. No. 138-1, at 3). OptiGen acknowledges however, that, for the purposes of the summary judgment motion, InGen is assuming that it performed the patented processes in the Bahamas. (*Id.*) So, while OptiGen might need all of the training manuals and testing protocols if it defeats InGen's summary judgment motion (which the March 24th discovery order would allow, following the District Court's ruling), it does not need the information to address the motion. Similarly, the limitation, pending the resolution of the summary judgment motion, on the duty of InGen to disclose its scientific consultants–only to the extent that they performed some services for InGen in the United States–is not necessary for OptiGen's response to the summary judgment motion. In any event, InGen essentially conceded that these consultants are from the United States; so InGen is unlikely to be able to withhold their identity under the discovery order. (Transcript of Discovery Conference, Dkt. No. 123, at 34-35).

and file a further response to InGen's summary judgment motion before that motion is decided by the District Court.

Accordingly, it hereby:

**ORDERED** that OptiGen's cross-motion under Fed. R. Civ. P. 56(f) (Dkt. No. 130) is granted, in that InGen's motion for summary judgment (Dkt. No. 116) will be held in abeyance pending the completion of discovery on July 30, 2010, and it is also:

**ORDERED** that OptiGen is granted leave to file a supplemental response to InGen's summary judgment motion by August 30, 2010, and it is also:

**ORDERED** that InGen is granted leave to file a further reply with respect to its summary judgement motion by September 15, 2010.

Dated: April 16, 2010

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge