UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

OPTIGEN, LLC,

                    Plaintiff,

                                                        Lead Case No.
v.                                                      5:09-CV-0006
                                                        (GTS/ATB)

INTERNATIONAL GENETICS, INC.,
GENETIC FULFILLMENT USA, LLC,
PINPOINT DNA TECH., INC.,
and RICHARD B. DOBBINS,
                    Defendants,
_____

INTERNATIONAL GENETICS, INC.,
GENETIC FULFILLMENT USA, LLC,
PINPOINT DNA TECH., INC.,
and RICHARD B. DOBBINS,
                    Counter-Claimants,

v.

OPTIGEN, LLC,
                    Counter-Defendant,
_____

OPTIGEN, LLC,

                    Plaintiff,

                                                        Member Case No.
v.                                                      5:09-CV-0457
                                                        (GTS/ATB)

INTERNATIONAL GENETICS, INC.,
GENETIC FULFILLMENT USA, LLC,
PINPOINT DNA TECH., INC.,
and RICHARD B. DOBBINS,
                    Defendants,
_____

APPEARANCES:                                    OF COUNSEL:

HODGSON RUSS LLP                                JODYANN GALVIN, ESQ.
  Counsel for Plaintiff                         ROBERT J. LANE, JR., ESQ.
The Guaranty Building                           MELISSA N. SUBJECK, ESQ.
140 Pearl Street, Suite 100
Buffalo, NY 14202-0349

FLYNN PEELER & PHILLIPS, LLC                    CHARLES E. PEELER, ESQ.
  Counsel for Defendants International Genetics
  Genetic Fulfillment USA, Pinpoint DNA
  Technologies, and Richard B. Dobbins
517 West Broad Avenue
P.O. Box 7 (31702)
Albany, GA 31701

MEGGESTO CROSSETT & VALERINO, LLP               JAMES A. MEGGESTO, ESQ.
  Counsel for Defendants International Genetics,
  Genetic Fulfillment USA, Pinpoint DNA
  Technologies, and Richard B. Dobbins
313 East Willow Street, Suite 201
Syracuse, NY 13203

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court in this patent infringement action filed by Optigen, LLC

("Plaintiff"), are the following three motions: (1) Plaintiff's motion to dismiss certain of the

counterclaims and to strike certain of the affirmative defenses of International Genetics, Genetic

Fulfillment USA, Pinpoint DNA Technologies and Richard Dobbins ("Defendants") for failure

to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 13); (2) a motion for summary

judgment filed by Defendant International Genetics ("InGen") (Dkt. No. 116); and (3) Plaintiff's

cross-motion to amend its Complaint (Dkt. No. 162, 166).  For the reasons set forth below,

Plaintiff's motion to dismiss is granted; Defendant InGen's motion for summary judgment is

granted in part and denied in part; and Plaintiff's motion to amend is granted.

2

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, Plaintiff's Complaint alleges as follows.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Plaintiff is in the business of providing DNA-based diagnostic services to test for inherited diseases in dogs.  On September 8, 1998, "United States Patent No. 5,804,388, entitled 'CHROMOSOME 9 AND PROGRESSIVE ROD-CONE DEGENERATION DISEASE GENETIC MARKERS AND ASSAYS' (the "'388 patent"), [was] issued."  "Cornell Research Foundation, Inc. is the assignee of the '388 patent, [and Plaintiff] is the exclusive licensee of the '388 patent."  On December 25, 2007, "United States Patent No. 7,312,037, entitled 'IDENTIFICATION OF THE GENE AND MUTATION RESPONSIBLE FOR PROGRESSIVE ROD-CONE DEGENERATION IN DOG AND A METHOD FOR TESTING SAME' (the "'037 patent"), [was] issued."  "Cornell Research Foundation, Inc. is the assignee of the '037 patent, [and Plaintiff] is the exclusive licensee of the '037 patent."  The 388 patent and 037 patents relate to identifying whether a dog is a carrier of Progressive Rod-Cone Disease ("PRCD"), is predisposed to PRCD, or is genetically normal.[1]

In 2006, Dobbins founded PinPoint, which offered a service called "Pawsitive I.D." for the DNA testing of dogs and cats.  "When Pawsitive I.D. was purchased by a customer, the customer was sent a kit that was used to collect a tissue sample[, which would] . . . then [be] mailed . . . back to PinPoint for analysis."  "In January 2008, [Plaintiff] notified PinPoint and Dobbins that their activity in selling, offering to sell, making and using genetic tests for PRCD

---

[1]        PRCD is a hereditary retinal disease that leads to blindness in dogs.

by means of the Pawsitive I.D. testing kit constituted infringement of the '388 and '037 patents."

"By April 15, 2008, PinPoint was no longer offering the PRCD test."

At some point in 2008, "InGen was established in . . . Freeport, Bahamas" by Dobbins. At approximately that time, "InGen purchased assets from PinPoint[,] including the Pawsitive I.D. product and trademark, database, and website domain names." Furthermore, "Dobbins prepared the content of InGen's website."

"The Pawsitive I.D. website (www.pawsitiveid.net) directs visitors to InGen's website (www.ingen.bs). "The InGen website states that 'InGen now offers the test for . . . []PRCD[] that PinPoint was forced to withdraw in April 2008 due to patent issues. . . . InGen does not have these issues and has recommended the testing for this eye disease.'" "On the InGen website, there is a question and answer column for InGen's customers[, which] includes" statements acknowledging that InGen's services would amount to patent infringement if offered in the United States, Canada and/or European Union.[2] "InGen offers the Pawsitive I.D. testing service (including the PRCD test) for purchase through its website, including to customers in the United States." "InGen also advertises the Pawsitive I.D. testing service (including the PRCD test) for

---

[2]       More specifically, Plaintiff alleges that the website makes, *inter alia*, the following statements: (1) "Pawsitive ID™ was forced to discontinue certain genetic tests due to patent issues in the United States, Canada & European Union[;]" (2) "[t]hese patents[, which] prohibit unlicensed use of the scientific techniques used in the detection of genetic mutations for some diseases[,] . . . were never filed in The Bahamas and therefore it is perfectly legal and ethical to use the scientific processes needed to determine if an animal has the mutation in this jurisdiction; (3) InGen offers a PRCD test "that is covered by . . . patents [the company was] previously prohibited from selling and testing"; (4) the price of the test increased "from $49.95 to $75.00" because, "[i]n order to legally offer some of [InGen's] genetic tests, [the company] needed to build a laboratory in The Bahamas[, which] has added many expenses to [the company's] product"; and (5) "InGen contracts with PinPoint DNA Technologies, Inc. of Atlanta, Georgia USA to provide genetic tests that are not associated with any existing patents in the USA."

4

sale within the United States."  "InGen has sold the Pawsitive I.D. testing service (including the PRCD test) to customers in the United States."

"InGen contracts with Genetic Fulfillment as a shipping contractor to fill the orders placed with InGen."  "When a customer places an order through InGen's website, Genetic Fulfillment ships the kit to the customer from Marietta, Georgia."  "Once the customer collects the sample from the dog or cat, the customer ships the sample to Genetic Fulfillment at a post office box in Atlanta, Georgia[, and] Genetic Fulfillment then forwards the sample to InGen in The Bahamas for performance of tests that infringe the '388 and '037 patents."

Based on these factual allegations, Plaintiff's Complaint asserts the following five claims against Defendants: (1) patent infringement and inducing infringement under Sections 271(a), 271(b) and 271(f) of the United States Patent Act against Defendants Pinpoint DNA Technologies ("Pinpoint") and Richard Dobbins ("Dobbins"); (2) patent infringement and inducing infringement under Sections 271(a), 271(b) and 271(f) of the United States Patent Act against Defendants InGen and Dobbins; (3) inducing infringement under Section 271(b) of the United States Patent Act against Defendant Genetic Fulfillment USA ("Genetic"); (4) false advertising under the Lanham Act against Defendants InGen and Dobbins; and (5) unfair competition against Defendants InGen, Dobbins and Pinpoint.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)[3]

---

[3]	Familiarity with the remaining factual allegations supporting Plaintiff's claims is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

**B.     Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 116, Attach. 3 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 127 [Plf.'s Rule 7.1 Response] *and* Dkt. No. 162, Attach. 14 [Plf.'s Suppl. Rule 7.1 Response].)

Richard B. Dobbins is the Chief Executive Director of InGen, which is a Bahamian corporation with an address of The Bloneva Building, Freeport, The Bahamas.  InGen offers diagnostic services to test for genetic diseases in dogs, including the testing for PRCD.  InGen was established in 2008, in direct response to Plaintiff's allegation of patent infringement, in its cease-and-desist letter, and for the sole purpose of offering patent-protected genetic tests from an offshore country, in which the patents-in-suit were not registered.

InGen operates out of an office at 1395 Cobb Parkway, N.W., Marietta, Georgia, where shipments are received and sent.  InGen's phone number begins with a 678 area code, which is the area code for the Atlanta area.  Sherrill Williams is the Operations Manager and sole employee of InGen.  She works exclusively out of the Marietta office, and has never traveled to the Bahamas.  Ms. Williams was a PinPoint employee until December 31, 2009.

InGen has no, and has never had any, employees or operations in the Bahamas.  Mr. Dobbs conducts most of his supervision of InGen's business from Georgia and infrequently goes to the Bahamas.

InGen maintains a website accessible to customers located in the United States.  The website allows anyone viewing it, including those located in the United States, to order InGen's genetic testing products.  Payment for the products can also be made on the website.  InGen's customers within the United States, who make up 80 to 85% of InGen's total customers, can access InGen's website to obtain their results.

6

Genetic is located in Suite G in the same building in Marietta, Georgia as the building in which InGen has its office.  Genetic does not have its own telephone number, fax number, or email account; rather, Genetic's telephone number, fax number, and email account are those of InGen's.  Genetic's only customers are InGen and PinPoint.  Ms. Williams has been identified to third parties as the Genetic contact.  In addition, Ms. Williams is listed as the contact on the Genetic FedEx account, which is paid for by InGen.

When a customer places an order through InGen's website, Genetic receives a notice.  Genetic then assigns a profile number to the test purchased, packages a kit for the customer to collect a sample of hair or other specimen, and ships the kit to the customer by FedEx.  Once the customer collects the sample from the dog, the customer ships the sample to Genetic in Marietta, Georgia.  InGen contracts with Dr. Sunar and Dr. Dennis Reeder, of Frisco, Texas, for DNA extraction services.  InGen does not have a DNA extraction facility in the United States or the Bahamas.  Once the DNA is extracted, InGen forwards it from Marietta, Georgia to a lab in Freeport, The Bahamas, for genetic testing.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement, Rule 7.1 Response, and Rule 7.1 Supplemental Response is assumed in this Decision and Order, which (again) is intended primarily for the review of the parties.  (*Id.*)

C.   **Plaintiff's Motion to Dismiss Certain of Defendants' Counterclaims and Affirmative Defenses for Failure to State a Claim**

Generally, in support of its motion to dismiss certain of Defendants' counterclaims and to strike certain of Defendants' affirmative defenses, Plaintiff argues as follows: (1) Defendants' Fourth Counterclaim alleging unenforceability for inequitable conduct should be dismissed and

their Fifth Affirmative Defense should be stricken because (a) neither were pled with particularity, and (b) the counterclaim and affirmative defense do not state a claim or defense; (2) Defendants' Fifth Counterclaim alleging unenforceability for patent misuse should be dismissed and their Sixth Affirmative Defense should be stricken because (a) Defendants failed to provide adequate notice of the relevant events, and (b) the counterclaim and affirmative defense do not state a claim or defense; and (3) Defendants' First Counterclaim for accord and satisfaction should be dismissed because Defendants did not (and could not) allege the existence of a new agreement under which Plaintiff released any claims of infringement by Defendants or waived any of its rights to enforce the patents. (*See generally* Dkt. No. 14 [Plf.'s Memo. of Law].)

In Defendants' response to Plaintiff's motion to dismiss, they concede that, with regard to their inequitable-conduct and patent-misuse counterclaims, "further specificity is required." (*See generally* Dkt. No. 19 [Defs.' Response Memo. of Law].)  As a result, "Defendants do not oppose [Plaintiff's] motion . . . to strike these pleadings and/or affirmative defenses without prejudice, and pending full discovery on those subjects." (*Id*.)  However, Defendants further argue that Plaintiff's motion to dismiss their accord-and-satisfaction counterclaim should be denied, without prejudice and pending further discovery on the subject because they have alleged facts plausibly suggesting that an enforceable contract was created between the parties in satisfaction of any claim for liability. (*Id*.)

In its reply, Plaintiff argues as follows: (1) based on Defendants' concession, their inequitable-conduct and patent-misuse claims must be dismissed; and (2) Defendants' accord-and-satisfaction counterclaim must also be dismissed because (a) the allegations in the counterclaim do not support a valid claim for accord and satisfaction, (b) Defendants' response

to Plaintiff's motion to dismiss does not contain "facts supporting a valid claim," (c) Defendants "failed to offer any probative evidence contesting [Plaintiff's] showing, based on documentary evidence, that [Plaintiff] did not release any claims for patent infringement," and (d) further discovery is not necessary when the allegations in the counterclaim "do not support a valid claim." (*See generally* Dkt. No. 20 [Plf.'s Reply Memo. of Law].)

### D. Defendant InGen's Motion for Summary Judgment

Generally, in support of its motion for summary judgment, Defendant InGen argues as follows: (1) Plaintiff's Second Cause of Action should be dismissed because (a) InGen does not perform, nor has it ever performed, genetic testing in the United States, and therefore cannot, as a matter of law, infringe Plaintiff's United States patents, and (b) InGen does not import into the United States any "diagnostic kits" for genetic testing or any "isolated nucleic acid molecule" and therefore cannot, as a matter of law, be liable for infringement of any apparatus claims of Plaintiff's United States patents; and (2) Plaintiff's Fourth and Fifth Causes of Action should be dismissed because (a) InGen's statements on its website that it is not infringing on Plaintiff's patents is not false or misleading, and therefore it cannot, as a matter of law, be liable under the Lanham Act for publishing these statements, and (b) InGen has not infringed any of Plaintiff's patents, and therefore cannot, as a matter of law, be liable for misappropriating any intellectual property belonging to Plaintiff. (*See generally* Dkt. No. 116, Attach. 1 [InGen Def.'s Memo. of Law].)

In Plaintiff's response to Defendant InGen's motion for summary judgment, it argues as follows: (1) the Federal Circuit's decision in *Cardiac Pacemakers Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009), does not bar Plaintiff's patent claims because the decision applies only to 35 U.S.C. § 271(f), and therefore does not apply to testing performed in the United

9

States; (2) Plaintiff has valid claims for infringement under 35 U.S.C. § 271(a) because

Defendant InGen offered to sell or sold the patented methods; (3) Plaintiff's claims alleging

inducing infringement under 35 U.S.C. § 271(b) are supported by admissible record evidence;

(4) Defendant InGen's role as PinPoint's successor precludes summary judgment; (5) Defendant

InGen's representation on its website that it is not infringing on Plaintiff's patents constitutes a

false statement concerning the nature and quality of InGen's products and services, which is

actionable under the Lanham Act; (6) because Plaintiff has a property interest in the information

protected by its patents, Defendant InGen can be held liable for unfair competition for using "the

skill, expenditures and labors" of Plaintiff to its commercial advantage; and (7) summary

judgment is inappropriate because discovery has not been completed.  (*See generally* Dkt. No.

124, Attach. 1 [Plf.'s Response Memo. of Law].)

In its reply, Defendant InGen argues as follows: (1) Plaintiff's Section 271(a) claim must

be dismissed because (a) the "sells" and "offers to sell" language in Section 271(a) does not

apply to method patents, and (b) even if the "sells" and "offers to sell" language in Section

271(a) applies to method patents, InGen does not sell or offer for sale in the United States any

methods for genetic testing; (2) there can be no inducement of infringement under 35 U.S.C. §

271(b) because Ingen does not induce its customers to conduct any genetic testing, does not

provide its customers with any materials necessary for conducting genetic testing, and conducts

all genetic testing outside the United States; (3) because Plaintiff's infringement claims cannot

survive its motion for summary judgment, Plaintiff's unfair competition and Lanham Act claims

must be dismissed; (4) any claims of successor liability against InGen are properly considered

through post-judgment proceedings, and only if liability is determined as to Defendant PinPoint;

and (5) further discovery before deciding its motion for summary judgment is not necessary

because "the only question before this Court is where InGen performs its genetic testing,"[4] and

no amount of discovery will change the fact that InGen operates in the Bahamas.  (*See generally*

Dkt. No. 137 [InGen Def.'s Reply Memo. of Law].)

In Plaintiff's supplemental response to Defendant InGen's motion for summary

judgment,[5] in addition to reiterating previously advanced arguments, it argues, *inter alia*, as

follows: (1) "[t]here is no dispute that InGen offers to sell and sells the patented method of

detecting [PRCD] to customers in the United States," and therefore summary judgment cannot

be granted to InGen on Plaintiff's Section 271(a) claims; (2) InGen should be held liable for

PinPoint's acts of infringement because discovery has revealed that no consideration was given

to PinPoint for the "purchase" of its assets by InGen, and that Defendant Dobbins controls every

aspect of the business of PinPoint and InGen; and (3) InGen and Dobbins have intentionally

misled InGen's customers by making it appear as if InGen owns a laboratory in the Bahamas

when in fact InGen owns only some equipment in the Bahamas.  (Dkt. No. 162, Attach. 1.)

Plaintiff also requests leave to amend its Complaint to add a Sixth Cause of Action "relat[ing] to

the transfer of PinPoint's assets," and allegations pertaining to "representations about InGen's

business operations and [the] location of InGen's business."  (*Id.*)  Finally, Plaintiff concedes

---

[4]      Defendant InGen assumes, for purposes of its motion for summary judgment, that
it practices the methods of Plaintiff's patent claims.  (Dkt. No. 116; Dkt. No. 137.)

[5]      On April 16, 2010, United States Magistrate Judge Andrew T. Baxter issued a
Decision and Order granting Plaintiff's cross-motion to permit additional discovery under Fed.
R. Civ. P. 56(f), and holding in abeyance pending the completion of discovery on July 30, 2010,
Defendant InGen's motion for summary judgment.  (Dkt. No. 143.)  In that Decision and Order,
Judge Baxter also granted Plaintiff leave to file a supplemental response to Defendant InGen's
summary judgment motion by August 30, 2010, and Defendant InGen leave to file a further
reply with respect to its summary judgement motion by September 15, 2010.  (*Id.*)

that the Federal Circuit's decision in *Cardiac Pacemakers, Inc*., which was issued during the

pendency of this action, "appears to" bar its claims asserted against InGen under Section 271(f).

(*Id*.)

In its supplemental reply (and response to Plaintiff's cross-motion), Defendant InGen

argues, *inter alia*, as follows: (1) even applying the "essential activity" test articulated in *CLS*

*Bank Int'l v. Alice Corp*., 667 F. Supp. 2d 29, 36 (D. D.C. 2009), it is entitled to summary

judgment on Plaintiff's Section 271(a) claims because "any sales and/or offers to sell genetic

testing in the present matter occur outside the United States, as do all transactions between

InGen and its customers and all genetic testing"; (2) the Supreme Court's decision in *Quantra*

*Computer, Inc. v. LG Elec., Inc*., 553 U.S. 617 (2008), did not overrule the Federal Circuit's

holding in *NTP, Inc. v. Research in Motion, LTD*, 418 F.3d 1282 (Fed. Cir. 2005), that the "sale"

and "offer for sale" language of Section 271(a) does not apply to method patents; and (3)

Plaintiff's cross-motion to amend should be denied because (a) the motion has been made after

an "inordinate delay," (b) allowing Plaintiff to amend will prejudice InGen by forcing it to "seek

additional and costly discovery to prove the truth of the statements [that Plaintiff alleges are

false,]" and (c) amendment would be futile based on Plaintiff's failure to adduce record evidence

establishing that any of the eight statements that Plaintiff seeks to add in the proposed Amended

Complaint are "literally false or misleading within the meaning of 15 U.S.C. § 1125(a)(1)(B)."

(Dkt. No. 177.)

In its reply to InGen's response to its cross-motion to amend,[6] Plaintiff argues, *inter alia*,

---

[6]     Pursuant to the Local Rules in the Northern District of New York, "[t]he cross-
moving party may not reply in further support of its cross-motion without the Court's prior
permission."  *See* N.D.N.Y. L.R. 7.1(c).  Here, the Text Notice issued by this Court on
September 2, 2010, may be construed as permitting Plaintiff to file a reply to its cross-motion to
amend.  As a result, the Court will consider Plaintiff's reply.

as follows: (1) Defendant InGen is the only Defendant to oppose the motion to amend; (2) it would not be futile to grant the motion to amend, and Defendant InGen's argument to the contrary should be rejected based on its failure to review the proposed Amended Complaint;[7] (3) the proposed Amended Complaint will not unduly prejudice Defendant InGen because possible exposure to additional liability does not constitute prejudice sufficient to deny a motion to amend the Complaint; (4) it did not delay moving to amend because the facts underlying the proposed Amended Complaint were not learned until "recently"; and (5) Defendant InGen's claim that granting the motion will require it to undergo "additional and costly discovery" is baseless because the additional factual allegations that Plaintiff seeks to add in its proposed Amended Complaint were known to Defendants "all along."

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motion to Amend a Complaint

A motion to amend a complaint is made pursuant to Fed. R. Civ. P. 15, which provides that leave to amend "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. Proc. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3rd 1127, 1133 (2d Cir. 1993). Elaborating on this standard, the Supreme Court has explained:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should . . . be 'freely given.'

---

[7]      In its response to Plaintiff's cross-motion to amend, Defendant InGen states that "[o]ne indication that [Plaintiff] itself does not believe its [C]omplaint should be amended after the close of discovery is the fact that it does not even submit a proposed amended complaint with its motion." (Dkt. No. 177.)  However, Plaintiff did in fact submit a proposed Amended Complaint with its motion.  (*See* Dkt. No. 162, Attach. 13.)

*Foman*, 371 U.S. at 182, *accord*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.").  With regard to the futility prong, "the proposed amended complaint [need only be] sufficient as to some claims" for the request to not be futile.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

### B.     Legal Standard Governing Motions to Dismiss Counterclaims and Strike Affirmative Defenses

"The standard on a motion to dismiss also applies to a motion to dismiss a counterclaim pursuant to [Fed. R. Civ. P.] 12(b)(6) and a motion to strike an affirmative defense pursuant to [Fed. R. Civ. P.] 12(f)."  *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp.2d 620, 622 (S.D.N.Y. 2008) (citing *FSP, Inc. v. Societe Generale*, 02-CV-4786, 2005 WL 475986, at *7-8 [S.D.N.Y. Feb. 28, 2005]).  For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).

### C.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### D.    Legal Standards Governing Plaintiff's Claims

Again, because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (Dkt. No. 116, Attach. 1 [InGen Def.'s Memo. of Law]; Dkt. No. 124, Attach. 1 [Plf.'s Response Memo. of Law]; Dkt. No. 137 [InGen Def.'s Reply Memo. of Law]; Dkt. No. 162, Attach. 1 [Plf.'s Suppl. Response Memo. of Law]; Dkt. No. 177 [InGen Def.'s Suppl. Reply Memo. of Law].)

## III.    ANALYSIS

### A.    Plaintiff's Motion to Amend Its Complaint

As stated above in Part I.D. of this Decision and Order, Plaintiff seeks to amend its Complaint to add a Sixth Cause of Action about piercing the corporate veil as well as allegations pertaining to "representations about InGen's business operations and [the] location of InGen's business."

As an initial matter, based on Plaintiff's statement in its supplemental response that the Federal Circuit's decision in *Cardiac Pacemakers, Inc.*, "appears to govern the claims asserted by [Plaintiff] under Section 271(f)," as well as Plaintiff's removal of all references to Section 271(f) in its proposed Amended Complaint,[8] the Court deems Plaintiff's Section 271(f) claims abandoned.  The Court would add only that, to the extent these claims were not intended to be abandoned, they would nonetheless be dismissed for the reasons stated by the Federal Circuit in *Cardiac Pacemakers, Inc.*

---

[8]        In its Complaint, Plaintiff expressly refers to Section 271(f).  (Dkt. No. 1.)

15

Having said that, the Court finds that, because discovery has concluded and Plaintiff's only new claim relates to matters that have already been discovered, Defendant InGen will not be unduly prejudiced by the Court granting Plaintiff's motion. Moreover, it cannot be said that Plaintiff unduly delayed filing its motion because, as Plaintiff notes in its memorandum of law in support of its motion to amend, the new allegations, including those giving rise to the newly asserted cause of action, were facts of which Plaintiff did not become aware until some point during discovery.

In addition, granting the motion would not be futile because the new cause of action states a claim upon which relief can be granted.[9] Under New York law, a corporation's veil may be pierced upon a showing that "control and dominion was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 138 (2d Cir. 1991); *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990) ("New York law allows the corporate veil to be pierced either when there is fraud or when the corporation has been used as an alter ego."). In *Passalacqua*, the Second Circuit explained that, to determine whether the corporation is dominated by an individual, the trier of fact should consider the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated

---

[9]     The Court notes that Defendant InGen's futility argument in its response memorandum of law does not address the newly asserted cause of action for piercing the corporate veil. (Dkt. No. 177.)

16

corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Passalacqua*, 933 F.2d at 139.  When examining these factors, "the question relating to the internal affairs of corporations-for profit or not-for-profit-are generally decided in accordance with the law of the place of incorporation."  *U.S. v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000) (concluding that, in deciding whether former president of Guatemalan-based corporation was alter ego of corporation, while "New York [law] provides the appropriate legal framework for deciding the alter ego question[,]" the law of the country of incorporation had to be considered "in deciding the embedded question of whether the [Guatemalan-based corporation] maintained the requisite corporate formalities").

Here, Plaintiff's proposed Amended Complaint alleges, *inter alia*, as follows: (1) Defendant Dobbins established PinPoint and InGen; (2) PinPoint transferred its assets to InGen without consideration; (3) Dobbins is the sole shareholder of InGen; (4) Dobbins is also the CEO and General Manager of InGen; (5) Dobbins makes all decisions about the operation of InGen and PinPoint; (6) Dobbins prepared the contents of InGen's website; (7) Dobbins controls PinPoint and InGen such that neither has a "separate mind, will, or existence of its own"; (8) "InGen and PinPoint did not comply with standard corporate formalities"; (9) "[a]t all relevant times, InGen and PinPoint were under the exclusive control of Dobbins"; and (10) "Dobbins has used InGen and PinPoint to his own benefit and to the detriment of [Plaintiff]."  (Dkt. No. 162, Attach. 13.)  Simply put, Plaintiff has alleged facts plausibly suggesting that InGen and PinPoint are dominated by Defendant Dobbins.

For these reasons, Plaintiff's motion to amend is granted, and Plaintiff's proposed

Amended Complaint is hereinafter deemed to be the operative pleading.

### B.        Plaintiff's Motion to Dismiss

As stated above in Part I.C. of this Decision and Order, Plaintiff seeks the dismissal of

certain of Defendants' counterclaims and certain of Defendants' affirmative defenses because

(1) Defendants' Fourth Counterclaim alleging unenforceability for inequitable conduct and Fifth

Affirmative Defense were not pled with particularity, and do not state a claim or defense, (2)

Defendants' Fifth Counterclaim alleging unenforceability for patent misuse and Sixth

Affirmative Defense fail to provide adequate notice of the relevant events, and do not state a

claim or defense, and (3) Defendants' First Counterclaim for accord and satisfaction does not

allege the existence of a new agreement under which Plaintiff released any claims of

infringement by Defendants or waived any of its rights to enforce the patents.

As also stated above in Part I.C. of this Decision and Order, Defendants concede that,

with regard to their inequitable-conduct and patent-misuse counterclaims, "further specificity is

required."  As a result, Plaintiff's motion to dismiss is granted with regard to Defendants' Fourth

and Fifth Counterclaims, and Fifth and Sixth Affirmative Defenses.

With regard to Defendants' accord-and-satisfaction counterclaim, Defendants allege that

the cease-and-desist letter sent by Plaintiff to Defendants PinPoint and Dobbins in January 2008

"constituted an offer to settle all disputes between the parties, and the activities of PinPoint and

Dobbins in ceasing to offer the accused PRCD test in the United States constituted an acceptance

of the Plaintiff's offer to settle all disputes between the parties."  (Dkt. No. 11 at ¶¶ 76-78.)

An accord and satisfaction is reached when "a good faith dispute existed over the

existence of a debt or an amount owed, and . . . the debtor and the creditor negotiated a contract

of accord to settle the claim." *Lamb v. Emhart Corp.*, 47 F.3d 551, 561 (2d Cir. 1995).  With

discovery having been completed, the Court has the benefit of viewing Plaintiff's cease-and-

desist letter, which "demand[s] that PinPoint and DNA Diagnostics, Inc. immediately cease and

desist offering to sell, selling, making and using genetic tests for PRCD and CSNB that infringe

[Plaintiff's] patents[,]" and warns that, if these Defendants fail to "confirm in writing . . . [by]

February 15, 2008, that [they] have permanently ceased and desisted from the aforementioned

activities . . . [, Plaintiff's attorneys] will be forced to consider taking further action . . . ."  (Dkt.

No. 162, Attach. 13, at 87-88.)

        As an initial matter, this letter does not expressly–or even implicitly–indicate that, if

Defendants PinPoint and DNA Diagnostics, Inc., cease and desist offering to sell, selling,

making and using genetic tests for PRCD and CSNB that infringe Plaintiff's patents, Plaintiff

will forego any claims that it may have against these Defendants.  Rather, the letter simply states

that, if these Defendants *do not* cease and desist, Plaintiff will pursue further action.[10]  In any

event, even assuming for the sake of argument that this letter constituted an offer by Plaintiff to

forego any claims it may have against these Defendants, such an offer was conditioned on these

Defendants ceasing and desisting from offering to sell, selling, making and using genetic tests

for PRCD and CSNB that infringe Plaintiff's patents by February 15, 2008.  However, it is

undisputed that these Defendants did not comply with Plaintiff's demand until April 1, 2008.

---

        [10]     To read Plaintiff's cease-and-desist letter as proposed by these two Defendants
would, in the Court's view, be to commit the informal fallacy of logic known as "denying the
antecedent."  Patrick J. Hurley, A Concise Introduction to Logic 296-97 (wadsworth Pub'lg Co.,
3d ed., 1998), *accord*, *Cusamano v. Sobek*, 604 F. Supp.2d 416, 474, n.122 (N.D.N.Y. 2009)
(Suddaby, J., adopting Report-Recommendation of Lowe, M.J.).  Simply stated, just because a
continuation of infringement by these two Defendants would result in a lawsuit does not mean
that a discontinuation of such infringement would not also result in a lawsuit.

For these reasons, Defendants' accord-and-satisfaction counterclaim is dismissed.

## C.      Defendant InGen's Motion for Summary Judgment

### 1.       Plaintiff's Infringement Claim Under 35 U.S.C. § 271(a)

As stated above in Part I.D. of this Decision and Order, Defendant InGen seeks the

dismissal of Plaintiff's Section 271(a) claim because (1) the "sells" and "offers to sell" language

in Section 271(a) does not apply to method patents, and (2) even if this language applies to

method patents, InGen does not sell or offer for sale in the United States any methods for genetic

testing.

For the reasons articulated by Judge Collyer in *CLS Bank Int'l v. Alice Corp.*, 667 F.

Supp. 2d 29 (D. D.C. 2009), the Court rejects Defendant InGen's first argument.[11]

Furthermore, based on the current record, the Court rejects Defendant InGen's second

argument, because Plaintiff has adduced admissible record evidence establishing that Defendant

InGen sold or offered for sale the infringing method within the United States.[12]  For example,

---

[11]       In *CLS Bank Int'l.*, the court noted that the Federal Circuit in *NPT* "'explicitly did not decide the question of whether a method claim may not be infringed under the 'sells' and 'offers to sell' prongs of section 271(a).'" *CLS Bank Int'l*, 667 F. Supp. 2d at 36 (quoting *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1334-35 [Fed. Cir. 2008], *cert. denied*, 129 S.Ct. 2864 [2009]).  The court then held that "one who 'sells' or 'offers to sell' each and every step of a patented method infringes the patent," even if those steps are performed outside the United States, rejecting the defendant's argument that "performance of the steps of a service for customers does not constitute a sale or offer to sell the method." *Id*. at 36-37 (noting that the Federal Circuit's "implication" in *Ricoh* "that a method could be sold for purposes of § 271(a) is supported by the Supreme Court's decision in *Quanta Computer, Inc. v. LG Elec., Inc.*, 128 S.Ct. 2109, 2117 (2008), which held that a method could be sold for purposes of 'patent exhaustion'").

[12]       "When the infringing act is an offer to sell or a sale, the relevant inquiry is not the place where the methods are performed but the place where the offer to sell or sale occurs." *CLS Bank Int'l*, 667 F. Supp. 2d at 37-38 (noting that, "[b]ecause CLS offers to perform the methods for U.S. banks for a fee and does perform the methods for its U.S. members for a fee, CLS 'offers to sell' and 'sells' the CLS Core System's methods within the United States[, regardless of the fact] [t]hat the methods are physically performed abroad").

Plaintiff has adduced evidence that (1) 80 to 85% of InGen's customers are located within the United States (Dkt. No. 162, Attach. 14, at ¶ 22), (2) InGen maintains a website accessible to customers located within the United States (Dkt. No. 162, Attach. 14, at ¶ 17), (3) Plaintiff's President, Susan Pearce-Kelling, purchased a PRCD test from InGen's website at her home in Berkshire, New York (Dkt. No. 126 at ¶¶ 3-6), (4) customers within the United States can access the results of their PCRD test through InGen's website (Dkt. No. 162, Attach. 14, at ¶ 21), (5) InGen's phone number begins with a 678 area code, which is the area code for the Atlanta area (Dkt. No. 162, Attach. 14, at ¶ 15), and (6) InGen sends and receives shipments from its office in Marietta, Georgia (Dkt. No. 162, Attach. 14, at ¶ 16).[13]

For these reasons, Plaintiff's claim under Section 271(a) survives Defendant InGen's motion for summary judgment.  The Court notes that, because neither Plaintiff nor Defendants have moved for summary judgment with regard to Plaintiff's claims against Defendant PinPoint, the Court need not, and does not, consider Plaintiff's argument that Defendant InGen may be

---

[13]     *See Baden Sports, Inc. v. Kabushiki Kaisha Molten*, 06-CV-0210, 2008 WL 356558, at *1 (W.D. Wash. Jan. 29, 2008) ("[A]lthough Molten could not be held liable for offers to sell infringing balls abroad, 'if Molten offers to sell infringing basketballs to U.S. consumers, even if the offer is made through a foreign website, Molten has offer[ed] to sell an infringing product in violation of [35 U.S.C.] § 271(a).'"); *Litmer v. PDQUSA.com*, 326 F. Supp.2d 952, 959 (N.D. Ind. 2004) ("[PDQ's] website not only solicits orders, . . . it accepts orders from its users. Clearly, PDQ's website is intended to 'generate interest in a potential infringing product to the commercial detriment of the rightful patentee,' and thus it constitutes an 'offer to sell' under § 271."); *ISCO Int'l, Inc. v. Conductus, Inc.*, 01-CV-0487, 2003 WL 280276, at *2 (D. Del. Feb. 10, 2003) ("Web site pages or 'advertisements' are considered offers for sale if they include pricing and/or other ordering information . . . ."); *Synaptic Pharm. Corp. v. MDS Panlabs, Inc.*, 265 F. Supp.2d 452, 462-63 (D. N.J. 2002) (denying defendants' motion for summary judgment because, based on offer to sell allegedly infringing assays in United States through website, question of fact remained regarding whether assays were offered for sale in United States); *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp.2d 869, 873 (E.D. Mo. 2000) (concluding that website ads were offers to sell within the meaning of Section 271[a], where website contained pricing information, form for website visitor to request additional information on product, and independent sales representative locator).

held liable, as a successor-in-interest, for Defendant PinPoint's alleged infringement.  However, it is worth noting that Plaintiff appears to have adduced admissible record evidence establishing that (1) PinPoint was established by Defendant Dobbins in 2006 (Dkt. No. 162, Attach. 5, at 14), (2) PinPoint infringed on Plaintiff's patents by "selling, offering to sell, making and using genetic tests for PRCD by means of the Pawsitive testing kit," within the United States, between sometime after it was formed and April 1, 2008 (Dkt. No. 162, Attach. 5, at 32), (3) InGen, which was established by Defendant Dobbins in December 2008, acquired PinPoint's assets (Dkt. No. 162, Attach. 5, at 85-85, 88), and (4) no consideration was provided for InGen's acquisition of PinPoint's assets (Dkt. No. 162, Attach. 5, at 87).

### 2.      Plaintiff's Inducement Claim Under 35 U.S.C. § 271(b)

As stated above in Part I.D. of this Decision and Order, Defendant InGen seeks the dismissal of Plaintiff's Section 271(b) claim because (1) InGen does not induce its customers to conduct any genetic testing, (2) it does not provide its customers with any materials necessary for conducting genetic testing, and (3) it conducts all genetic testing outside the United States. Based on the current record, the Court accepts Defendants' argument.

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "'In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement,' and 'second,' that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'"  *Cross-Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting, *inter alia*, *Minn. Mining & Mfg. Co. v. Chemque, Inc*., 303 F.3d 1294, 1304-05 [Fed. Cir. 2002]).  With regard to the intent requirement, the Federal Circuit has held that "more than just intent to cause the acts that produce direct infringement" is required.

*DSU Med. Corp. v. JMS Co., Ltd*., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  In addition, "the inducer must have an affirmative intent to cause direct infringement."  *DSU Med. Corp*., 471 F.3d at 1306.  "Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Id*. (citing, *inter alia*, *MGM Studios, Inc. v. Grokster, Ltd*., 545 U.S. 913, 936-37 [2005]).

It is undisputed that Defendant InGen has been aware, since its incorporation, of Plaintiff's patents.  For example, Plaintiff sent Defendants Dobbins and PinPoint a cease-and-desist letter prior to InGen's establishment.  In addition, the Court has already concluded that there exists a genuine issue of material fact regarding whether Defendant InGen directly infringed on Plaintiff's patents by selling, or offering for sale, Defendant InGen's alleged infringing method.  However, in order for Plaintiff's inducement claim to survive Defendant InGen's motion for summary judgment, Plaintiff must adduce record evidence establishing that (1) a third party directly infringed on its patents, and (2) Defendant InGen induced this infringement.

Here, Plaintiff has failed to adduce record evidence establishing that, by purchasing a DNA test kit from InGen and sending the company their pet's DNA sample, InGen's customers infringed on Plaintiff's patents.  Indeed, the Court notes that Plaintiff has actually alleged facts plausibly suggesting that (1) the activities by Defendant PinPoint of "selling, offering to sell, making and using genetic tests for PRCD by means of the Pawsitive I.D. testing kit constituted infringement of [Plaintiff's patents,]" (2) InGen sold the Pawsitive I.D. testing kit after allegedly purchasing PinPoint's assets, and (3) although InGen "discontinued the Pawsitive I.D. platform" in or about July 2009, InGen continues to offer the PRCD test for purchase through its website.

23

(Dkt. No. 162, Attach. 13.)  In other words, Plaintiff's Amended Complaint alleges facts

plausibly suggesting that it was *Defendant InGen*, and not its customers, that directly infringed

on Plaintiff's patents.  *Cf. Jansen v. Rexall Sundown, Inc*., 342 F.3d 1329, 1334 (Fed. Cir. 2003)

(premising claim of indirect infringement against defendant vendor on allegations that its

customers directly infringed plaintiff's patent); *Dynacore Holdings Corp. v. U.S. Philips Corp*.,

363 F.3d 1263, 1272 (Fed. Cir. 2004) (noting that "the direct infringer is typically someone other

than the defendant accused of indirect infringement").

 For these reasons, Plaintiff's inducement claim under Section 271(b) is dismissed.

  **C.** **Plaintiff's False Advertising Claim Under the Lanham Act**

 As stated above in Part I.D. of this Decision and Order, Defendant InGen seeks the

dismissal of Plaintiff's false advertising claim under the Lanham Act because Plaintiff's

infringement claims cannot survive its motion for summary judgment.  Essentially, Defendant

InGen argues that its statements on its website relating to its non-infringement of Plaintiff's

patents cannot give rise to a cause of action under the Lanham Act because the statements are

true.  Based on the current record, the Court rejects Defendant InGen's argument.

 Section 43(a) of the Lanham Act provides, in pertinent part, as follows:

> Any person who, on or in connection with any goods or services, . . .
> uses in commerce any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading representation of
> fact, which . . . in commercial advertising or promotion, misrepresents
> the nature, characteristics, qualities, or geographic origin of his or her
> or another person's goods, services, or commercial activities, . . . shall
> be liable in a civil action by any person who believes that he or she is
> or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1)(B).  "A claim of false advertising may be based on at least one of two

theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the

advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'" *Tiffany Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 [2d Cir. 2007]).  In either case, the "injuries redressed in false advertising cases are the result of public deception." *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992).

Because a patent is not a good or service, a misleading statement about the ownership of a patent does not give rise to a false advertising claim.  *See Hans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG*, 96-CV-8147, 1998 WL 148427, at *2 (S.D.N.Y. Mar. 27, 1998) (collecting cases); *Digigan, Inc. v. Ivalidate, Inc.*, 02-CV-0420, 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004).  However, a plaintiff may establish a false advertising claim under either of the above-described two theories by demonstrating "that the false or misleading representation involved an inherent or material quality of the product." *Time Warner Cable*, 497 F.3d at 153 n.3.

Here, Plaintiff has adduced admissible record evidence establishing that Defendant InGen promotes (and sells) its products and services on its website.  In addition, it is undisputed that Defendant InGen has published on its website statements indicating that its products and services, including the PRCD test, do not infringe any patents.  In other words, Defendant InGen advertises on its website that it has a "good" for sale, its PRCD test kit, and that its sale of this "good" is legal because the "good" does not infringe on any patents.  Such advertising concerns the nature, quality or characteristics of this good (and not Plaintiff's patent).[14]  As a result,

---

[14]     *Cf. Digigan, Inc.*, 2004 WL 203010, at *5 ("The Amended Complaint alleges that Defendants violated section 43(a) of the Lanham Act by making false and misleading representations concerning Defendants' rights in one of the patents. These misrepresentations

assuming that these statements are literally false (or likely to mislead or confuse consumers), which the Court has already found must be decided by a finder of fact, Defendant InGen may be held liable for false advertising under the Lanham Act.

For these reasons, Plaintiff's claim under the Lanham Act survives Defendant InGen's motion for summary judgment.

### D.     Plaintiff's Claim of Unfair Competition

As stated above in Part I.D. of this Decision and Order, Defendant InGen seeks the dismissal of Plaintiff's unfair competition claim because Plaintiff's infringement claims cannot survive its motion for summary judgment.  Essentially, Defendant InGen argues that (1) the words "misappropriated" and "infringed" are synonymous for purposes of unfair competition claims centered on acts of patent infringement, and (2) because Defendant InGen cannot be liable for patent infringement, it cannot be liable for unfair competition.  Based on the current record, the Court rejects Defendant InGen's argument.

To state a claim of unfair competition under New York law, a plaintiff must allege that the defendant "misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so."  *Abe's Rooms, Inc. v. Space Hunters, Inc*., 38 A.D.3d 690, 692 (N.Y. App. Div., 2d Dept. 2007); *Greenblatt v. Prescription Plan Servs. Corp*., 783 F. Supp. 814, 825 (S.D.N.Y. 1992) (noting that, to state a claim for unfair competition, the plaintiff must allege "unfairness and an unjustifiable attempt to profit from another's expenditure

---

allegedly were made in the course of Defendants' website advertising of products protected by the patent. The gravamen of Plaintiff's claim is that Defendants, in marketing their products, falsely stated that they owned the patent that Plaintiff received from iValidate under the security agreement. Thus, the alleged misrepresentations concerned the patent, not any products or services.").

of time, labor, and talent").  The elements of unjust enrichment under New York law are "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc*., 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 751 N.Y.S.2d 622, 623 [N.Y. 2002]).[15]

Here, Plaintiff alleges that it is actively engaged in the business of providing DNA-based diagnostic and testing services for inherited diseases of dogs in the United States.  (Dkt. No. 162, Attach. 13, at ¶¶ 2, 10, 11, 80.)  Plaintiff further alleges that, by offering DNA-based diagnostic and testing services for inherited diseases in dogs, Defendants InGen, Dobbins and PinPoint "are willfully misappropriating for their own benefit [Plaintiff's] intellectual property and are profiting and unjustly enriching themselves by the unlawful and unauthorized use of [Plaintiff's] intellectual property."  (*Id*. at ¶ 80.)  Finally, Plaintiff alleges that "[t]he conduct of [Defendants] InGen, Dobbins and PinPoint in offering for sale and selling tests to the public that they know misappropriate [Plaintiff's] intellectual property injures the business and goodwill of [Plaintiff], in violation of the common law of unfair competition."  (*Id*. at ¶ 82.)  For example, Plaintiff alleges that Defendants have acquired customers in the United States through their misconduct. (*Id*. at ¶¶ 13, 31-35, 38, 39, 45, 58, 64.)

Granted, Plaintiff is not the assignee of the 388 and 037 patents.  Rather, Plaintiff is the licensee of these patents.  Therefore, "Plaintiff's labor was not expended, nor talent tapped, in producing the patented technology."  *Digigan, Inc.*, 2004 WL 203010, at *6 (finding that, where

---

[15]    The Court notes that the Second Circuit has made clear that "the elements of an unfair competition [claim] and [a] Lanham Act claim are different."  *Morex S.p.A. v. Design Inst. Am., Inc*., 779 F.2d 799, 801 (2d Cir. 1985).

a lender argued that "it expended money through its agreements with [the assignee], and has, in effect, purchased the patent" in a foreclosure proceeding, the unfair competition claim was simply a restatement of the patent infringement claim because "it is the money spent in *developing* a product or process that the tort of unfair competition protects") [emphasis in original].  However, Plaintiff's Amended Complaint may be liberally construed as alleging facts plausibly suggesting that it has spent time and money building up the value to consumers and prospective consumers of the PRCD test, and that Defendant InGen has misappropriated this goodwill by unlawfully selling its own PRCD test.[16]  To the extent that the Amended Complaint alleges a loss of business and/or goodwill based on Defendant InGen's alleged unlawful sale of PRCD test kits, the unfair competition claim is not simply a restatement of the patent infringement claim.

For these reasons, Plaintiff's unfair competition claim survives Defendant InGen's motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to amend its Complaint (Dkt. No. 162, 166) is **GRANTED.**  Plaintiff is directed to file its amended complaint by March 21, 2011; and it is further

**ORDERED** that Plaintiff's motion to dismiss Defendants' First, Fourth and Fifth Counterclaims and to strike Defendants' Fifth and Sixth affirmative defenses (Dkt. No. 13)  is **GRANTED**; and it is further

---

[16]    The Court notes that all pleadings must be liberally construed.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**ORDERED** that Defendant InGen's motion for summary judgment (Dkt. No. 116) is

**GRANTED** **in part** and **DENIED** **in part** in the following respects:

(1) Plaintiff's following claims are **DISMISSED**:

    (a) Plaintiff's claim of patent infringement under 35 U.S.C. § 271(b) against

Defendant InGen; and

    (b) Plaintiff's claim of patent infringement under 35 U.S.C. § 271(f) against

Defendant InGen; and

(2) Plaintiff's following claims survive Defendant InGen's motion for summary

judgment:

    (a) Plaintiff's claim of patent infringement under 35 U.S.C. § 271(a) against

Defendant InGen;

    (b) Plaintiff's claim of misrepresentation under the Lanham Act against

Defendant InGen;

    (c) Plaintiff's claim of unfair competition against Defendant InGen; and

    (d) all remaining claims on which Defendant InGen did not move for summary

judgment.

Dated: March 8, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge